# THE SUPERIOR COURT OF THE STATE OF DELAWARE

**STATE OF DELAWARE**,      **)**
      **)**
      **)**
      **)**
    **v.**      **)**      **I.D. No. 1508009967**
      **)**
      **)**
**GENE L. FULTON,**      **)**
      **)**
      **Defendant.**    **)**

Date Submitted:  December 4, 2024
Date Decided: March 4, 2025

## _Upon Defendant's Motion to Correct an Illegal Sentence - **DENIED**_

This 4th day of March, 2025, upon consideration of Defendant Gene Fulton's Motion for Correction of Illegal Sentence,[1] the submissions of counsel, and the full record in this matter, it appears to the Court that:

1.      On March 7, 2016, Fulton pled guilty to one count of Burglary in the Second Degree and one count of Theft from a Senior.[2]  Prior to sentencing, the State moved to re-declare Fulton a habitual offender (hereinafter "habitual motion") pursuant to 11 _Del. C_. § 4214.[3]  The Court granted this motion based on the criminal

---

[1] D.I. 25.
[2] D.I. 12.
[3] D.I. 15.  Fulton had previously been declared a Habitual Offender in Crim. Act. No. 0405021948 for the charge of Burglary in the Second Degree.

history set forth in the motion and re-declared Fulton a habitual offender. Accordingly, Fulton was sentenced to fifteen years at Level V, with no probation to follow, pursuant to 11 *Del. C.* § 4214(b) for Burglary in the Second Degree, and two years at Level V, suspended for decreasing levels of supervision, for Theft from a Senior.[4] Fulton did not appeal either conviction.

2.      Fulton, through counsel, filed a Motion for Modification of Sentence pursuant to Superior Court Criminal Rule 35(b) on June 28, 2016.[5] This Court denied that motion on September 15, 2016.[6]

3.      Fulton now seeks relief under Super. Ct. Crim. R. 35(a) asserting that his sentence was illegal.[7] Fulton filed his motion *pro se*, and after the State's response, retained counsel. The Court permitted counsel to file an amended motion, and the instant Motion to Correct a Sentence Imposed in an Illegal Manner and Motion to Modify Sentence was filed on May 24, 2024.[8] The State responded on June 28, 2024.[9] The Court heard argument on August 28, 2024.[10] Given the issues presented, the Court requested parties review the sentencing transcript and full pre-sentence investigation (hereinafter "PSI") and each party was given an opportunity

---

[4] Sentencing Order, D.I. 17.
[5] D.I. 12.
[6] D.I. 23.
[7] D.I. 25 at 1.
[8] D.I. 33.
[9] D.I. 34.
[10] D.I. 38.

to supplement their respective positions.[11]  Following review, Fulton and the State submitted supplemental papers regarding whether the Sentencing Judge based Fulton's sentence upon the error in the Habitual Motion that Fulton's prior sexual offense conviction as Unlawful Sexual Penetration instead of Unlawful Sexual Contact.  Both parties submitted cross-responses on December 4, 2024.[12]  The matter is now ripe for decision.

4.      Under Rule 35(a), the Court may correct an illegal sentence at any time.[13]  A sentence is illegal if it exceeds the statutorily authorized limits, violates the Double Jeopardy Clause, "is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction did not authorize."[14]

5.      Fulton does not argue he was improperly declared a habitual offender. Fulton argues his sentence was imposed in an illegal manner in that "the State misrepresented [his] criminal record to the sentencing judge" in its Habitual Motion causing the Sentencing Judge to improperly believe he was convicted of Unlawful Sexual Intercourse, as opposed to the lesser charge of Unlawful Sexual Penetration

---

[11] *Id.* The Sentencing Judge has since retired.
[12] D.I. 36, 39.
[13] Super. Ct. Crim. R. 35(a).
[14] *Brittingham v. State*, 705 A.2d 577 (Del. 1998).

3rd Degree.[15]  Fulton points to the Sentencing Order as proof that the Sentencing Judge based its enhanced sentencing upon the erroneous charge.  The portion of the sentencing Order Fulton cites states:

> NOTE:  Scores of traffic violations, Unable or unwilling to conform to societal rules.
> - First felony conviction 1981 for Robbery 2nd with scores of other charges dismissed at that time.
> - First CCDW 1985.
> - 1991 Assault 2nd
> - 1991 Unlawful sexual intercourse without consent, 4 count endangering welfare and VOP.
> - 2004 Burglary 2nd
> - 2004 RSP[16]

As a result, Fulton requests this current sentence be vacated, and he be re-sentenced.[17]  Fulton requests review despite clearly filing this motion beyond the 90-day timeline set forth in Rule 35.   In support, he argues *dicta* in *Johnson v. State*[18] allows for review under the "good cause" exception where the State misrepresents a defendant's criminal record at the time of sentencing.[19]  Finally, Fulton argues that his dying mother provides another reason to reduce his sentence and should the Court now impose the recommended sentence of twelve (12) years at Level V, he may be able to spend time with his mother at home before her passing.[20]  Upon his

---

[15] D.I. 33, ¶11.
[16] D.I. 17.
[17] *Id.* ¶ 12.
[18] *Johnson v. State*, 2022 WL 121315, at *1 (Del. 2022).
[19] D.I. 33, ¶¶ 14-17.
[20] *Id.* at ¶ 17.

review of the sentencing transcript and PSI, Fulton added the Sentencing Judge relied, in part, upon the representation that his prior sexual offense conviction was for Unlawful Sexual Intercourse, in finding the aggravating factors that he was not "amendable to supervision in the community" and that "efforts of rehabilitation by the State have been futile."[21]

6.      The State's opposition first asserts Fulton's motion is untimely and good cause for review does not exist; the State disputes there was a misrepresentation but describes the error as akin to a scrivener's error.  First, the State references the plea agreement itself, which correctly states:

> Defendant agrees that defendant has previously been convicted of the following prior felonies:  Burglary 2nd – 09/04; x3 Unlawful Sexual Penetration 3rd – 07/92; Assault 2nd – 07/92; CCDW – 1985; Escape – 1981; and Robbery 2nd – 01/81.[22]

Further, the State asserts that the supporting certified convictions to the Habitual Motion correctly state the name of the offense and notes that Fulton had multiple opportunities, including at the time of sentencing, to correct the title of his prior conviction, but did not.[23]   The State argues that its only representation at sentencing regarding this conviction was referencing his "felony sexual charge[]" during a discussion regarding a violation of probation matter.[24]  The State notes that the PSI

---

[21] D.I. 40, quoting the Sentencing Transcript.
[22] D.I. 12, 34, p. 1.
[23] D.I. 34, pp. 2-3, 8-10.
[24] D.I. 39, pp. 3-5.

itself references "unlawful sexual intercourse without consent," which was not a State filing or representation.[25] The State argues that the sentencing transcript reflects that the Sentencing Judge listed a myriad of reasons for the upward departure from the State's recommendation, including the entirety of Fulton's criminal history and behavior, over and above the sexual assault conviction.[26]

7.     In sentencing, the court has broad discretion to consider previous conduct both charged and uncharged.[27] The Court does not find that the State's Habitual Motion was a misrepresentation that rises to the level of "good cause" to excuse the untimely filing of the instant motion. Fulton had multiple opportunities to point out this error to counsel, the State and to the Court well-within the time limits prescribed by Rule 35. Further, the record suggests the misnaming of the prior offense amounts to a mere error, as opposed to a misrepresentation. The supporting documentation to the Habitual Motion contained the correct name of the prior sexual offense, and the plea paperwork itself correctly names the offense. The State cannot be attributed to any mistakes in the PSI, as that is prepared by an independent officer. However, even without finding good cause, Fulton's motion will be reviewed on its merits.

---

[25] *Id.* at p. 5.
[26] *Id.*
[27] *Mayes v. State*, 604 A.2d 839, 842-843 (Del. 1992).

8.     A careful review of the complete record, including the sentencing transcript, shows the Sentencing Judge, while adopting the error on the face of the Habitual Motion and in the PSI, relied on a multitude of factors to justify the upward departure from the State's sentencing recommendation.  Specifically, the Court, not only in its sentencing comments but again in its Order denying Fulton's first motion for sentence modification, outlined the details of his crime and noted concern for the careful calculation and cruelty of his offenses.   In denying Fulton's first request for modification, the Court's Order detailed the relevant factors considered, which tracked the Court's findings at the time of sentencing:

1.     An 82-year old woman returned to her home where she lived alone to find Defendant inside her house.  Defendant fled with some jewelry.  Defendant had planned this crime and intentionally wore a uniform from a former job with Artesian Water to escape notice in the residential neighborhood.  Defendant had been fired by Artesian Water prior to the burglary.

2.     Defendant was arrested on August 14, 2015, and was subsequently indicted by a grand jury for charges of Burglary Second Degree and Felony Theft, as well as Driving while Suspended or Revoked.  At that time, Defendant had been released from supervision only 1 year before.

3.     Defendant admitted responsibility, stating that he dressed as an Artesian Water employee and stole jewelry from a home while high on heroin.

4.     Defendant's Delaware criminal history began with arrests in 1977 when he was fourteen years old and continued without significant pause until the 2015 burglary for which he was sentenced in this case. The only arrest-free periods in Defendant's history were periods of incarceration.

5. The first time Defendant was declared an habitual offender was in 2009. Defendant served 8 years at Level 5 on this sentence, and was under supervision until one year prior to his arrest in this case.[28]

Notably, the Court, while focusing on the nature of the crime and prior convictions, did not name the prior sexual offense in its decision. Fulton's criminal record was of concern to the Court, and relied upon on in sentencing, but the nature of this contested crime did not substantially change due to the error in labeling. At the heart of the matter Fulton was convicted of a felonious sexual offense, and it was one of multiple convictions for serious felony offenses during his criminal career. There is simply no evidence on the record specifying "intercourse" instead of "penetration" was the deciding – or even a significant – factor in the Court's decision. Instead, the record supports the notion that it was the fact that there was a felony sexual offense conviction, amongst many other felony convictions justified the departure.

9. The Court had before it at sentencing the following facts:

a. Fulton planned and executed a burglary of an elderly woman's home, disguised in an Artesian Water employee's uniform to gain access;

b. Fulton has a violent criminal history with convictions stemming back to 1981;

---

[28] D.I. 23.

c. Fulton was previously declared a habitual offender on for a burglary conviction;

d. Fulton, after serving the full burglary sentence at Level V, was released and recommitted the same offense;

e. The psycho forensic evaluation report provided by Fulton's then-counsel highlighting the mitigators that Fulton had severe substance abuse issues, untreated mental health diagnosis, and prior family trauma.

The Court's comments at sentencing show that, while Fulton's sexual offense was mentioned and considered, it was not the crux behind the sentence:

> I have read and considered statements presented here both in the courtroom, and those submitted in writing, including the psycho forensic evaluation, and the presentence investigation…I have carefully considered the statutory scheme for these offenses…[t]he guidelines promulgated by SENTAC, the aggravating circumstances, the potential deterrent effect of a sentence and my own judgment and discretion…The State characterized Mr. Fulton's behavior as a little troubling. I actually find it more than a little troubling. The defendant is not only a high school graduate, he is a college graduate…He's also had the benefit of numerous, indeed, almost every available treatment program…After serving eight years as a habitual offender for a burglary, while wearing his Artesian Water uniform, he walks through a neighborhood – by his terms – angry and looking for someone to take out his anger on and burglarizes the home of an 82-year-old innocent woman. I don't find the mitigating circumstances…to be especially compelling…This defendant not only has scores…of traffic violations, which demonstrate that he is either unable or unwilling to conform his conduct to societal norms. His first felony conviction was in 1981 for robbery second…His first carrying a concealed deadly weapon conviction is in 1985. He has an assault second conviction in 1991. Also in 1991, he's got a conviction as a sex offender for an unlawful intercourse without consent. And that included four counts of

endangering the welfare of a child. In 2004 he commits another burglary…second degree. That is when he is declared a habitual offender. He also has a receiving stolen property at that time involving a weapon…I just cannot determine what else can be done for this individual other than the programs and the opportunities that have already been made available. The Court finds a pattern of behavior consistent with a person who steadfastly refuses to accept responsibility for his behavior, who fails to take any affirmative steps to avoid committing new crimes.[29]

The Court then found the following SENTAC aggravators: Prior violent criminal conduct, repetitive criminal conduct, lack of remorse, lack of amenability to lesser sanctions, and vulnerability of the victim. The Court found its exceptional sentence to be justified.

10. The Court's comments make it clear that there are a plethora of legal supported reasons for Fulton's exceptional sentence. There is no evidence in the record to indicate the Court improperly relied on misinformation. To the contrary, the Court carefully considered the record and was so familiar with the entirety of Fulton's background that it cannot be said that "inaccurate or unreliable information"[30] was relied upon in crafting its sentence. The incorrect labeling of Fulton's sex offense in the Habitual Motion was, in fact, akin to a scrivener's error and does not support a finding that Fulton's sentence is illegal; to the contrary, Fulton's sentence is legal.

---

[29] D.I. 16; *See Transcript.*
[30] *Mayes*, 604 A.2d at 843.

**THEREFORE**, Fulton's Motion to Correct Illegal Sentence under Rule 35(a) is **DENIED**.

**IT IS SO ORDERED**.

_____
Danielle J. Brennan, Judge

Cc:    Barzilai Axelrod, Esquire
        Natalie Woloshin, Esquire

Original to File